IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


AARON T. JONES,                                    )
                              Plaintiff            )
                                                   )
        vs.                                        )        Civil Action No. 08-16
                                                   )        Judge Terrence F. McVerry/
MELVIN LOCKETT, Superintendent;                    )        Chief Magistrate Judge Amy Reynolds Hay
FRANCIS ROYER, Deputy                              )
Superintendent; PAUL THOMAS, School                )
Principal; DAWN DAVIS, Librarian;                  )
PATRICIA COLLINS, Librarian Assistant;             )
JAMES INGELBETCH, Correctional                     )
Officer; JAMES SCEKERES, Deputy                    )
Superintendent at S.C.I. Greensburg;               )
TREVOR WINGARD, Deputy                             )
Superintendent at S.C.I. Greensburg; LORI          )
KWISNEK, Health Care Administrator;                )
ROBERT BUSSARD, Intelligence Captain               )
at S.C.I. Greensburg; TONI COLLAND,                )
Superintendent Assistant/Grievance                 )
Coordinator/Public Relations Officer;              )
KENNETH NIEDIGH, Educational                       )
Instructor at S.C.I. Greensburg; CHARLES           )
WALTERS, Academic Counselor at S.C.I.              )
Greensburg; JEFFREY A. BEARD,                      )
Secretary of the States of Pennsylvania            )
Department of Corrections,                         )        Re Dkt. [66]
                              Defendants           )



REPORT AND RECOMMENDATION


I.  Recommendation

        It is respectfully recommended that Defendants' motion to dismiss, Dkt. [66], be granted

in part and denied in part.  It should be granted as to all claims against all Defendants except it

should be denied as to the following claims against the following defendants.  It should be denied

as to Plaintiff's (1) Equal Protection claim against Defendants Thomas, Davis, Collins and

Engelbrecht concerning his being denied employment as an inmate library aide; (2) First

Amendment claims of content based censorship against Defendants Collins and Davis for their

alleged role in disbanding/discarding African American interest section of the library; (3) First

Amendment retaliation claim against Defendant Walters where Walters fired Plaintiff from his

peer to peer tutoring position; (4) the Equal Protection claim against Walters based upon the

same firing; and (5) the Eighth Amendment deliberate indifference claim against Defendant

Kwisnek as to denial of medication while in the RHU.  Consequently, Defendants Lockett,

Royer, Scekeres, Wingard, Bussard, Colland, Niedigh, Beard and Watson[1] should be dismissed

as party defendants.

II.  Report

    A.  Relevant Procedural History

    Aaron T. Jones ("Plaintiff") is a state prisoner who has filed a civil rights complaint

against sixteen Defendants, all of whom are Department of Corrections ("DOC") employees.  He

complains about discrete events that transpired at SCI-Greensburg, from roughly August 2007 to

March 2008, when Plaintiff was then transferred out of SCI-Greensburg to SCI-Somerset.[2]   The

Defendants, all represented by the Attorney General's office, filed a motion to dismiss the

complaint for failure to state a claim upon which relief can be granted.

---

[1] See Dkt. [67] at 4, n.1 (the Defendants noted that Ms. Watson was not served with process but conceded solely for purposes of disposing of the instant motion to dismiss that Ms. Watson will be treated as if she were a named and served defendant).

[2] Plaintiff was recently transferred from SCI-Somerset to SCI-Fayette. Dkt. [78].

Plaintiff's original complaint was filed in February 2008. That complaint listed only six defendants, namely, Melvin Lockett, Superintendent of SCI-Greensburg, Francis Royer, Deputy Superintendent, Paul Thomas, the prison's School Principal, Dawn Davis, the Librarian, Patricia Collins, the Librarian Assistant and James Engelbrecht,[3] a corrections officer. The original complaint alleged that Defendants Davis and Collins refused to hire Plaintiff, as an inmate library clerk because Plaintiff was an African-American and the two defendants were racist and that they instead hired two less-qualified Caucasian males. Dkt. [6] at 5, ¶ IV.d. In addition, Plaintiff complained that Defendant Davis was attempting to dismantle the African-American section of books in the SCI-Greensburg Library. Defendant Engelbrecht was alleged to have conspired with Defendant Davis to deny Plaintiff the inmate library clerk position. The remaining defendants were alleged to have permitted the wrongful actions of Defendants Davis and Collins.

Subsequently, Plaintiff filed an amended complaint, Dkt. [36]. In that amended complaint, Plaintiff added the following defendants: James Scekeres, Trevor Wingard, both of whom are Deputy Superintendents, Lori Kwisnek, the Health Care Administrator, Robert Bussard, the Intelligence Captain, Toni Colland, the Superintendent's Assistant/Grievance Coordinator, Kenneth Niedigh, an educational Instructor, and Charles Walters, an Academic Counselor. Plaintiff reiterated in the amended complaint, the very same claims he made in the original complaint but then also added some claims.

The added claims are as follows. Plaintiff added a claim that Defendants Thomas and Niedigh signed a certificate, falsely certifying that Plaintiff satisfactorily completed "standards" (perhaps classes or benchmarks) when, in fact, Plaintiff had never even been taught those

---

[3] Plaintiff inconsistently spells Defendant Engelbrecht's name as Engelbrecht or Ingelbetch.

3

standards. Dkt. [36] at 4, ¶ 13. Plaintiff also added a claim that Defendant Walters "fired" Plaintiff from his peer-to-peer tutoring position. Id., at 5, ¶14(a). Plaintiff also complained that after he filed a grievance against Walters for firing him from the tutoring position, he was placed in the Restricted Housing Unit ("RHU" or "R.H.U.") based upon a request by Walters for a "separation" from Plaintiff due to Mr. Walters feeling threatened by Plaintiff. See id., at 6, ¶ 15. Plaintiff alleged that he was retaliated against for the filing of the grievance. Next, Plaintiff complained about Defendants Scekeres, Wingard and Kwisnek, who constituted the Program Review Committee ("P.R.C.") that reviewed Plaintiff's transfer to the R.H.U. Plaintiff alleged that these three willfully and maliciously failed to properly conduct Plaintiff's P.R.C. hearing. Id., at ¶ 15. Against Defendant Bussard, Plaintiff alleged that, as Intelligence Captain, Bussard conspired with Defendant Walters and other John Does to retaliate against plaintiff by his apparent "willful and malicious failure to effectively and objectively investigate allegations made against plaintiff by defendant Charles Walters[.]" Id., at ¶ 18.

The Defendants filed a motion to dismiss the amended complaint, Dkt. [39] and a brief in support. Dkt. [40]. Attached to the brief in support were indisputably authentic documents. Thereafter, Plaintiff eventually sought leave to file an amended complaint. Dkt. [48]. The Court directed the Defendants to file a response to the Plaintiff's motion, which requested leave to file an amended complaint, Dkt. [53], and the Defendants complied. Dkt. [56] (opposing the grant of leave to file an amended complaint). The Court granted Plaintiff's motion for leave and the second amended complaint was filed. Dkt. [61].

That second amended complaint apparently added two Defendants, namely, Jeffrey Beard and Grievance Officer Wendy Watson. Dkt. [61] at 1, ¶ 4; at 6, ¶¶ 17(a) & 39(a). In addition to

reiterating all of the factual allegations contained in the amended complaint, Plaintiff added the claim that Defendant Beard ignored a letter Plaintiff had sent to Beard wherein Plaintiff informed Secretary Beard of the troubles he was having with staff at SCI-Greensburg. See Dkt. [61] at 4 ¶ 33. Plaintiff also alleged that Cindy Watson is the Chief Grievance Officer at the DOC and that she "denied several of plaintiff's appeals without investigating the issues contained in the appeals" and that she "denied or dismissed every appeal plaintiff filed without objective and subjective review." Dkt. [61] at 6, ¶ 39(a). Although Plaintiff had specified in the earlier complaints the statutory and constitutional bases of his claims, he failed to do so in the second amended complaint.

The Defendants filed a motion to dismiss the second amended complaint (hereinafter, "the operative complaint"), Dkt. [66] and a brief in support. Dkt. [67]. The Defendants incorporated their earlier brief in support, i.e., Dkt. [40] into their current brief in support.[4] Plaintiff eventually filed a response, Dkt. [73] and a brief in opposition to the Defendants' motion to dismiss. Dkt. [74].

B. Standard of Review **and the PLRA**

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under this standard, the Court must, as a general rule, accept as true all

---

[4] Dkt. [67] at 3 ("for the reasons set forth in defendants' Brief in Support of Motion to Dismiss (Docket # 40, which is incorporated herein by this reference) . . . .").

factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001). Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at __, 127 S.Ct. 1955, at 1965 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are

true even if doubtful in fact[.]" <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-1965

(2007). Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for

failure to state a claim upon which relief can be granted if it does not plead "enough facts to state

a claim to relief that is plausible on its face." <u>Id.</u> at 1974.

    In addition, because Plaintiff was, at the time of the filing of this civil action,[5] a prisoner

and because he named governmental entities or employees thereof as defendants, the screening

provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply

herein, as do the screening provisions of 28 U.S.C. § 1915(e), given that Plaintiff is a prisoner

who has been granted IFP status. In addition, because he complains about "prison conditions,"

the screening provisions of 42 U.S.C. § 1997e apply. The court's obligation to dismiss a

complaint under the PLRA screening provisions for complaints that fail to state a claim is not

excused even after defendants have filed a motion to dismiss. <u>See</u>, <u>e.g.</u>, <u>Lopez v. Smith</u>, 203

F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not

relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its

dismissal upon such ground pursuant to the screening provisions of the PLRA. <u>See</u> <u>Lopez</u>; <u>Dare</u>

<u>v. U.S.</u>, CIV.A.06-115E, 2007 WL 1811198, *4 (W.D.Pa. June 21, 2007), <u>aff'd</u>, 264 Fed.Appx.

183 (3d Cir. 2008).

    C. <u>Discussion</u>

---

    [5] <u>See</u>, <u>e.g.</u>, <u>In re Smith</u>, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the
day he files a civil action, the PLRA applies."); <u>Colby v. Sarpy County</u>, No. 4:01CV3130, 2006 WL
519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e.,
whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to
a case.").

We shall generally address Plaintiff's claims in the order in which they were raised in the operative complaint.

The first incident Plaintiff complains about is the fact that he was not "hired" for the inmate library clerk position. Dkt. [61] at 2 to 3, ¶¶ 18 to 21. Plaintiff does not make clear in the operative complaint what laws he claims were violated by this non-hiring. However, in his brief in response and in his other complaints he does refer to a number of laws.

Plaintiff claims that it is unlawful for an "employer," or potential "employer" in this case, to discriminate against him in hiring on the basis of race. Plaintiff cited to 42 U.S.C. §2000-e, commonly known as Title VII,[6] as one of the bases for this claim. Dkt. [74] at 4. However the rule is that "prison inmates performing work in prisons are not employees for purposes of Title VII, Age Discrimination in Employment Act, or Equal Pay Act protection, since their work relationships arise from their status as inmates, the primary purpose of which is incarceration rather than employment." 1 Emp. Discrim. Coord. Analysis of Federal Law § 18:31 (2009) (footnotes omitted). See also Wade v. Cal. Dep't of Corr., 171 Fed.Appx. 601 (9th Cir. 2006); Portley-El v. Zavaras, 188 F.3d 519 (Table), 1999 WL 542631 (10th Cir. 1999); Williams v. Meese, 926 F.2d 994 (10th Cir. 1991); Rhodes v. Schaefer, No. 98-3323-GTV, 2002 WL 826471 (D. Kan. March 20, 2002); McCaslin v. Cornhusker Indus., 952 F. Supp. 652 (D. Neb. 1996); Walton v. Fed. Prison Indus., No. 89-3257-R, 1991 WL 126708 (D. Kan. June 13, 1991); Pettis,

---

[6] Golden v. Services Exchange, Inc., NO. 97 C 7517, 1999 WL 350665, at *1 (N.D.Ill. May 19, 1999) ("Plaintiff Cheryl D. Golden, a black woman, has sued defendant Services Exchange, Inc., a residential facility for the developmentally disabled, for alleged race discrimination and retaliation under 42 U.S.C. § 2000-e of the Civil Rights Act of 1964, commonly known as Title VII ").

v. Danzig, EEOC DOC 01964038, 1999 WL 146596, at *2, (E.E.O.C. March 2, 1999);  EEOC

Dec. No. 86-7, Fair Empl. Prac. Cas. ¶ 6865 (CCH), 1986 WL 38836 (April 18, 1986).

Plaintiff cites to one case from the Ninth Circuit, Baker v. McNeil Island Corrections

Center, 859 F.2d 124, 127 (9th Cir. 1983) in support of his claim that Title VII applies to

prisoners who work in the prison.  In Baker, the plaintiff, who was a state prisoner, alleged that

he was discriminated against on the basis of his race, when he was not hired to be a library aide

in the correctional center's library.  Baker, 859 F.2d at 125.  The district court dismissed the

plaintiff's action after considering factors typically used in analyzing whether an individual is an

employee or an independent contractor under Title VII.  Id. at 128.  The District Court found that

while a number of the eleven factors it considered militated against finding the prisoner an

employee, the most important factor, the right to control the means and manner of performing the

work, "strongly suggests" an employer employee relationship.  Id.  See Spirides v. Reinhardt,

613 F.2d 826 (D.C.Cir. 1979) (applying eleven factors in determining whether an individual is an

employee or an independent contractor for Title VII). The District Court also examined the

economic realties of the relationship.  Id.  It concluded that these distinguished the

prison-prisoner context from an employer-employee one and so dismissed the case for failure to

state a claim upon which relief could be granted.  Id.  The Ninth Circuit Court concluded that the

lower court erred in dismissing the action for failure to state a claim.  The Circuit Court stated

that because the most important factor--the right to control how the prisoner does his job existed,

and in view of the allegations contained in the complaint, it was improper to dismiss.  The

Circuit Court also analogized the prisoner's employment to apprenticeship and job training

programs, areas protected by Title VII as well. 42 U.S.C. § 2000e-2(d) (1994).

This Court finds the Ninth Circuit's approach in <u>Baker</u> unpersuasive. In applying a test whose purpose is to determine whether a particular individual is an employee or an independent contractor to the question of whether a prisoner, applying for a work assignment in a prison context and for work actually taking place within the prison for prison pay constitutes an "employee" within the meaning of Title VII strikes this Court as simply not a useful test to apply. Rather, the Court finds persuasive the majority rule as expounded by the cases cited above.

Moreover, although it does not appear that the Third Circuit has spoken to this precise issue, the Court notes that the Third Circuit has spoken to a similar issue, determining that prisoners are not "employees" for purposes of the Fair Labor Standards Act ("FLSA") as a matter of law, when it affirmed the dismissal of a prisoner's complaint alleging violations of the FLSA when he was not adequately paid for his prison work. <u>Tourscher v. McCullough</u>, 184 F.3d 236 (3d Cir. 1999). In <u>Tourscher</u>, our Court of Appeals noted its agreement with the Second Circuit when it declared "[t]he relationship [between prisoner and prison] is not one of employment; prisoners are taken out of the national economy; prison work is often designed to train and rehabilitate; prisoners' living standards are determined by what the prison provides; and most such labor does not compete with private employers...." We conclude that if the Circuit were confronted with the issue which confronts us now, it would hold that, as a matter of law, Plaintiff is not an "employee" or a applicant to become an "employee" within the meaning of Title VII. Hence, this claim must be dismissed for failure to state a claim upon which relief can be granted.

We turn next to Plaintiff's Equal Protection claim that flows from these same facts. Plaintiff claims that his not being hired by the Defendants violated his rights under the Equal

Protection clause of the Fourteenth Amendment. Plaintiff alleged that the Defendants denied him a job because of his race and gave a job to other less qualified white prisoners.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. In order "[t]o state an equal protection claim, plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Sabatini v. Reinstein, No. 99-2393, 1999 WL 636667, at *4-*5 (E.D. Pa. Aug. 20, 1999). See also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). Essentially, to demonstrate an equal protection violation, an inmate has the burden of showing under the second prong the existence of purposeful discrimination. Hernandez v. New York, 500 U.S. 352 (1991); McCleskey v. Kemp, 481 U.S. 279, 292 (1987).

We find that the operative complaint is sufficient even under Twombly, to state a claim upon which relief can be granted. Plaintiff has sufficiently alleged that he was differentially treated from others similarly situated (in fact, with respect to the inmate librarian position, he was even better situated, i.e., better qualified than his white competitors) and that the differential treatment was caused by racism. We are not persuaded by the Defendants' contentions to the contrary that the complaint fails to state an Equal Protection claim.[7] Hence, the Equal Protection

---

[7] While the Defendants invited this Court to convert their motion to dismiss into a motion for summary judgment, Dkt. [40] at 10 n.3, the Court did not do so when ordering Plaintiff to respond. Dkt. [42]. Nor did the Court do so when it ordered Plaintiff to file a response to the current motion to dismiss. Dkt. [68]. Nor does the Court deem it proper to do so now. Accordingly, anything not properly considered under the standards governing motions to dismiss will not be considered in disposing of this

claim against Defendants Thomas, Davis, Collins and Engelbrecht survives the motion to dismiss.

Next, in the operative complaint, Plaintiff complains that the African American section of the prison library was dismantled by Defendant Davis and that several of the books in that collection were found to be in the trash. Dkt. [61] at 3, ¶¶ 24 to 27. It is not clear from the complaint what law Plaintiff contends that this alleged dismantling of the African American section violated. However, reading the complaint in a light most favorable to Plaintiff and viewed through the lens of his response, Dkt. 74 at [5], it becomes apparent that Plaintiff is alleging that due to racism, Defendants Davis and Collins disbanded the African-American section of the library, or perhaps, more accurately, redistributed the African-American collection throughout the library according to a Dewey Decimal system rather than permitting all of the African-American collection to be confined in one particular place, and that she/they deliberately threw out African-American interest books and that she/they took these actions based upon her/their alleged racism in order to "halt the dissemenation [sic] of knowledge obtained and shared by African-Americans through literature[,]" Dkt. [74] at 5, and further that they undertook these actions to "censor[] . . . literary works by prominent [African-American] authors. . . ." Id. The Court understands this to be a First Amendment censorship claim based upon content. The Court finds this to be sufficient to state a First Amendment claim. As Defendants concede, "a prison may not discard books for 'improperly motivated' reasons." Dkt. [40] at 19. This is precisely what the operative complaint alleges. The Defendants' contentions that the complaint does not state a First Amendment claim against Defendants Collins and Davis are not persuasive.

motion.

Hence, the operative complaint's First Amendment claim against Defendants Collins and Davis survives the motion to dismiss.

Next, the operative complaint alleges that Defendants Thomas and Niedigh falsely certified that Plaintiff successfully studied and mastered certain standards. Dkt. [61] at 3 to 4, ¶28. In the operative complaint, Plaintiff does not make clear what law these allegations violated. However, in his response, Plaintiff makes clear that he is alleging a claim under 18 U.S.C. §§241, 371, 1031 and 1341 as well as under 42 U.S.C. § 1985. In addition, Plaintiff clarifies that he is also adding as Defendants to this claim Defendants Locket and Royer. Dkt. [74] at 9.

Plaintiff's invocation of the criminal statutes under Title 18, fails to state a claim as a matter of law because such allegations of violation of federal criminal statutes fail to state a claim upon which relief can be granted under Section 1983. A civil rights action for violation of a federal statute fails to state a claim under Section 1983 unless the other federal statute itself provides to individuals a private right of action. See, e.g., Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 27-28 (1981) (while section 1983 encompasses violations of rights secured by the 'laws' of the United States, it is available only to remedy violations of those federal statutes which create rights within the meaning of section 1983); Frison v. Zebro, 339 F.3d 994, 998 (8th Cir. 2003)("Violation of a federal statute does not automatically give rise to a civil rights claim under § 1983. This is because '[i]n order to seek redress through § 1983, ... a plaintiff must assert the violation of a federal **right**, not merely a violation of federal **law**.' Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis in original)"). It is clear that the criminal statutes invoked by Plaintiff, i.e., 18 U.S.C. §§ 241, 371 and 1341 do not provide for a

13

private cause of action. In other words, those statues do not confer a right to a person. Hence, violating the statute does not violate a federal civil right of the Plaintiff within the contemplation of Section 1983. See, e.g., Concert v. Luzerne County Children and Youth Services, NO. CIV. A. 3:CV-08-1340, 2008 WL 4753709, at *3 (M.D.Pa., Oct. 29, 2008) ("Criminal statutes do not generally provide a private cause of action nor basis for civil liability. See e.g., Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (18 U.S.C. §§ 241, 242 provide no private right of action and cannot form the basis of a civil suit); Pawelek v. Paramount Studios, Corp., 571 F.Supp. 1082, 1083 (N.D.Ill.1983) (no private cause of action inherent in federal criminal statutes defining civil rights violations)."); U.S. ex rel. Vampire Nation v. Citifinancial Mortg. Co., Inc., Civ.A. No. 06-936. 2007 WL 2142404, at *5 (W.D.Pa. July 9, 2007) ("Plaintiff's First through Fifth so-called Causes of Action, invoke 18 U.S.C. §§ 241 through 245. These are all criminal statutes. Plaintiff has no private cause of action under these criminal statutes and hence these claims must be dismissed for failure to state a claim upon which relief can be granted.") (collecting cases); Rogerson v. U.S., NO. CV 08-5060, 2009 WL 1361875, *5 n.1 (D.S.D. May 13, 2009) (no private cause of action under Section 371); Parker v. Shemwell, Civ.A. No. 08-1622, 2009 WL 211708, at *2 (W.D.La. Jan. 28, 2009) (no private right of action under 18 U.S.C. § 371). See also Saro v. Brown, 11 Fed.Appx. 387, 388 (6th Cir. 2001)("The district court also properly concluded that Saro possessed no private right of action against Brown for alleged violations of 18 U .S.C. §§ 1341 & 1343. Violations of these sections of the federal criminal code do not give rise to independent, private causes of action. Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 386 (6th Cir. 1997)."); Ayres v. General Motors Corp., 234 F.3d 514, 520-521 (11th Cir. 2000) (no private cause of action under Section 1341).

The foregoing reasoning applies to all of the criminal statutory claims except 18 U.S.C. § 1031, commonly known as the Whistle Blower act, which does permit a private cause of action, however such private cause of action is limited to employee whistle blowers. <u>Goel v. U.S. Dept. of Justice</u>, NO. 03 CIV. 0579, 2003 WL 22047877, at *2 (S.D.N.Y., Aug. 29, 2003) ("Goel's attempt to invoke 18 U.S.C. § 1031(h) must fail because it provides **only** a private right of action against employers, such as IIC. See 18 U.S.C. § 1031(h) ("Any individual who ... is discharged ... because of lawful acts done by the employee ... in furtherance of a prosecution [for fraud] ... may in a civil action, obtain all relief necessary to make such individual whole."); <u>Pentagen Techs. Int'l, Ltd. v. CACI Int'l Inc.</u>, 1996 WL 435157, at *12 (S.D.N.Y. Aug.2, 1996) (Section 1031(h) 'allows a person who participated in a government investigation pursuant to § 1031(g)(2), and who suffered adverse employment consequences as a result, to sue his employer.'"); <u>see</u> <u>also</u> <u>Moore v. California Inst. of Tech. Jet Propulsion Lab.</u>, 275 F.3d 838, 845 (9th Cir. 2002) (acknowledging that § 1031(h) gives a whistle blowing employee a private cause of action against an employer for retaliatory employment action).")(emphasis added). Because we find that Plaintiff is not an "employee" for purposes of the Whistle Blower Act any more than he was an "employee" for purposes of Title VII, any private cause of action under the Whistle Blower Act fails to state a claim as a matter of law.

Plaintiff also invokes 42 U.S.C. § 1985 as to these defendants, Dkt. [74] at 9, and also as to other defendants concerning other factual allegations. <u>See</u>, <u>id.</u>, at 2. The Court finds Plaintiff's allegations of conspiracy to be conclusory and lacking sufficient factual heft within the

contemplation of Twombly[8] to withstand the motion to dismiss.  See e.g., Rose v. Bartle, 871

F.2d 331, 366 (3d Cir. 1989)("[t]he allegations [of conspiracy] must be sufficient to 'describe the

general composition of the conspiracy, some or all of its broad objectives, and the defendant's

general role in that conspiracy.'").  Nor does this requirement that allegations of conspiracy be

more than conclusory run afoul of the generous pleading standard under Fed.R.Civ.P. 8(a) as

construed in Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S.

163 (1993). See, e.g., Loftus v. SEPTA, 843 F.Supp. 981, 988 (E.D. Pa. 1994) ("Requiring that a

complaint alleging conspiracy flesh out in some detail the nature of the scheme does not run

afoul of the admonition in Leatherman .... Rather, in the context of a conspiracy, the 'short and

plain statement' provision of Rule 8 is satisfied only if the defendant is provided with the degree

of particularity that animates the fair notice requirement of the rule.").   The same foregoing

reasoning concerning a Section 1985 conspiracy claim applies equally to any Section 1983

conspiracy Plaintiff may be attempting to assert.  Accordingly, all of Plaintiff's statutory claims

must be dismissed for failure to state a claim upon which relief can be granted as well as all of

Plaintiff's claims of conspiracy under either Section 1985 or Section 1983.

---

[8] Twombly,  550 U.S. at 557:

> The need at the pleading stage for allegations plausibly suggesting (not merely
> consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the
> "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A
> statement of parallel conduct, even conduct consciously undertaken, needs some setting
> suggesting the agreement necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an account of a defendant's
> commercial efforts stays in neutral territory. An allegation of parallel conduct is thus
> much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close
> to stating a claim, but without some further factual enhancement it stops short of the line
> between possibility and plausibility of "entitle[ment] to relief."

Plaintiff next raises the claim that Defendant Walters fired him from his peer to peer tutoring job in retaliation for Plaintiff's filing of grievances and the instant Section 1983 lawsuit against the Education Department at SCI-Greensburg. Dkt. [61] at 4, ¶ 30.

Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983. White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). Accord Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech.") (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).

In order to prevail on a retaliation claim, a plaintiff must allege: (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. See Anderson v. Davila, 125 F.3d at 161 (citing Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

We find that the operative complaint sufficiently alleges retaliation against Defendant Walters. Defendants contend that "Jones makes no allegations that he was engaged in a protected right when he was removed from his position." Dkt. [40] at 22. Whether that was true of the first amended complaint (to which Dkt. [40] was originally addressed and we recall that Dkt. [40] was incorporated in the presently pending motion to dismiss by Defendants in Dkt. [67]

at 3), it clearly is not true of the operative complaint. Dkt. [61] at 4, ¶ 30 (alleging "retaliation for filing grievances and a 1983 Action against the Education Department."). Hence, this retaliation claim against Defendant Walters survives the motion to dismiss.

Similarly, we find that Plaintiff's allegation that he was fired from his peer-to-peer tutoring job based on racial animus by Defendant Walters, sufficient to state an Equal Protection claim under the Fourteenth Amendment. Dkt. [61] at 6, ¶ 30(a).[9] As such, it survives the motion to dismiss.

Plaintiff next raised the following facts in his operative complaint. Plaintiff complains that after he was accused of threatening Defendant Walters, he was immediately placed in the Restricted Housing Unit, under Administrative Custody, although Plaintiff states that his privileges mirrored those placed in Disciplinary Custody rather than Administrative Custody. Dkt. [61] at 4 to 5, ¶¶ 34 to 39; id., at 6, ¶ 36(a). Plaintiff does not make clear in the operative complaint what laws he believes were violated by these alleged actions. However, in his response, Plaintiff makes clear that he is attempting to state both a First and Fourteenth Amendment claim. Dkt. [74] at 11.

The First Amendment claim against Beard, Watson, Lockett and Colland appears to be based on a claim that Plaintiff was denied the right to petition the government insofar as they failed to investigate and/or denied Plaintiff's grievances/grievance appeal, concerning the adverse actions taken against him. Plaintiff appears to seek to hold the Defendants liable based upon

---

[9] While we generally follow the factual allegations of the complaint in the order in which they appear therein, Plaintiff's Equal Protection claims appear later in the complaint than do the immediately following factual allegations we address below, but because these Equal Protection claims against Defendant Watson are based on the same facts as the First Amendment retaliation claim, we took this claim out of the order in which it appears in the operative complaint.

their role in the grievance process and/or their failure to respond properly to his letters/grievances. Dkt. [74] at 9 ("Defendants Beard, Lockett, and Colland either refused to investigate many grievance[s] filed by Plaintiff or turned a blind eye to Plaintiff's request for relief."). This fails to state a claim upon which relief can be granted.[10]

To the extent that Plaintiff seeks to make out a First Amendment claim, contending that the Defendants' actions violated his First Amendment right to petition the government, his claim fails as a matter of law. Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)(per curiam)("the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); Wilson v. Horn, 971 F.Supp. 943, 947 (E.D. Pa. 1997) (where prisoner sued DOC officials for failing to respond to his grievances, the court held that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights. Prisoners do have a constitutional right to seek redress of their grievances from the government, but that right is the right of access to the courts, and this right is not compromised

---

[10] Actually, it appears that Plaintiff seeks to hold Defendant Beard liable, not so much for his role in the grievance procedure, in that it appears Defendant Beard does not have a direct role in the grievance procedure, rather, the final stage of grievance appeals is assigned to Defendant Watson. Instead, it appears that Plaintiff complains that Secretary Beard did not directly respond to a letter from Plaintiff, complaining of his alleged difficulties but, rather, referred it to Defendant Watson. Dkt. [74] at 11. To the extent that Plaintiff complains Defendant Beard failed to directly respond to his letter, such fails to state a claim as a matter of law. See, e.g., Robinson v. Weinfurtner, 72 F.3d 133 (Table), 1995 WL 754099, at *1 (8th Cir. 1995) (inmate "Robinson did not have a . . . right to speak insolently to the officer, to lodge a complaint with the officer's supervisor in a manner contrary to established prison procedure. . ."); Richardson v. Coughlin, No. 93-CV-6254, 2000 WL 815117, at *4-*5 (W.D.N.Y. June 19, 2000) (superintendent's ignoring of complaint normally handled by Inmate Grievance Office does not suffice to allege personal involvement by superintendent); Pritchett v. Artuz, 99 Civ. 3957, 2000 WL 4157, at *6 (S.D.N.Y. Jan. 3, 2000) (blatantly ignoring prisoner's letter not sufficient to allege superintendent's personal involvement).

by the failure of the prison to address his grievances."), aff'd, 142 F.3d 430 (3d Cir. 1998) (Table).

To the extent that Plaintiff is making a First Amendment retaliation claim against Defendants Beard, Watson, Lockett and Colland, based on their roles in the grievance procedure and/or failing to respond to letters, we find that the allegations of the complaint lack the requisite heft pursuant to Twombly, in order to state a claim and so must be dismissed on that basis.

Nor can Plaintiff make out a Fourteenth Amendment procedural due process claim based upon these Defendants' roles in the grievance process because he has no liberty or property interest in the grievance process, and so denying his grievances denies him nothing of any constitutional significance.

To the extent that Plaintiff is attempting to make out a Fourteenth Amendment procedural due process claim based on these Defendants actions' in relation to the grievances Plaintiff filed, again, he fails to state a claim as a matter of law. See, e.g., Anderson v. Colorado Dept. of Corrections, 185 F.3d 873 (Table), 1999 WL 387163, *2 (10th Cir. 1999)("petitioner's allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner. The failure to conduct an investigation or respond to petitioner's grievances does not impose an atypical and significant hardship"); Metcalf v. Veita, 156 F.3d 1231 (Table), 1998 WL 476254, *2 (6th Cir. 1998)("As to the conduct attributed to the warden personally, consisting of denying Metcalf's appeals and grievances, Metcalf did not state a due process claim because he suffered no atypical and significant hardship as a result."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981)("the simple fact that state law

prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.").[11]

To the extent that Plaintiff is attempting to make out a claim, other than a First or Fourteenth Amendment claim, based upon the Defendants' roles in the grievance process, such is insufficient, as a matter of law, to state a claim as to these Defendants under the circumstances of this case. For the rule is that "[t]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, No. CIV. A. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). See also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Mitchell v. Keane, 974 F.Supp. 332, 343 (S.D.N.Y. 1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Hall, NO. CIV.A. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000)("The failure of a prison official to act favorably on an inmate's

---

[11] Plaintiff cannot make out a procedural due process claim as to the denial of his grievances notwithstanding the claim he makes that the Proposed Educational Program Plan for SCI-Greensburg refers to the grievance procedure and allegedly states that such grievance procedure "injects a due process monitoring element[.]" Dkt. [61] at 5, ¶ 39. Such a characterization in a State program plan simply cannot dictate to the Courts whether the grievance procedure creates a due process liberty or property interest for purposes of federal Constitutional analysis. We reject any implication that such characterization creates a liberty or property interest arising from State law.

grievance is not itself a constitutional violation."); Orrs v. Corns, No. CIV.A. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct. 13, 1993)("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Jefferson v. Wolfe, NO. CIV A. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006)("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. *See Watkins v. Horn*, 1997 WL 566080, at * 4 (E.D.Pa.. [sic]1997)(concurrence in an administrative appeal process is not sufficient to establish personal involvement)").

Hence, Plaintiff's claims, be they First or Fourteenth Amendment due process claims, against Defendants Beard, Watson, Lockett and Colland for their roles in the grievance system, fail to state a claim and must be dismissed.

The next claim we address is an Eighth Amendment claim of medical deliberate indifference. Plaintiff alleged that he is a diabetic and that while he was in general population he, allegedly, self medicated. However, he claims that when he was placed in the RHU after Defendant Walters reported that Plaintiff had threatened him, he was "denied his medication which was supposed to be self medicated." Dkt. [61] at 6. Although this was all that was alleged in the operative complaint, Plaintiff expounds upon this in his response. Specifically, Plaintiff alleges that he must take his diabetic medication within a specific time frame after breakfast and that because of a staff shortage, he was not able to do so and this delay in his medication caused his blood sugar levels to rise to dangerous levels. Dkt. [74] at 13; Dkt. [61] at 6, ¶ 36(a). In addition, Plaintiff alleges that "Defendant Kwisnek knew of the staff shortage that caused there to be no medical staff able to administer meds to Plaintiff several hours after his first meal of the

day." Dkt. [74] at 13. Contrary to Defendants' contentions, Dkt. [67] at 5 to 7, Plaintiff's allegations sufficiently allege both the subjective and objective prong required under the Eighth Amendment. We find this sufficient to state a claim of Eighth Amendment deliberate indifference and so this claim against Defendant Kwisnek survives the motion to dismiss. However, to the extent that he attempts to render any Defendant other than Defendant Kwisnek liable for the Eighth Amendment deliberate indifference claim, the complaint fails to state a claim upon which relief can be granted because the complaint is totally lacking in any allegations as to the requisite subjective prong. See, e.g., Dkt. [61] at 6, ¶¶ 17(b) & 36(a) (where it appears Plaintiff attempts to render all three members of the PRC committee, which included not only Defendant Kwisnek but also Defendant James Scekeres and Trevor Wingard).

In addition to the Eighth Amendment medical claim, Plaintiff attempts to make out an Eighth Amendment conditions of confinement claim, asserting that while he was in the RHU, he had to shower in showers where the drains were somewhat clogged, which forced him to stand in "other inmates[']dirty shower water [which] overflowed into plaintiff's shower stall emersing [sic] plaintiff's feet and ankles." Dkt. [61] at 4, ¶ 36.

To establish a violation of the Eighth Amendment standards that govern a prisoner's conditions of confinement requires, as to the objective component, a showing that the prisoner has been deprived of the "minimal civilized measure of life's necessities." Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)(internal quotes omitted), superseded by statute on other grounds as stated in Ghana v. Holland, 226 F.3d 175, 184 (3d Cir. 2000). Demonstrating that one has been deprived of the minimal civilized measure of life's necessities requires a showing that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical

23

care and personal safety" from physical assault. <u>Griffin v. Vaughn</u>, 112 F.3d 703, 709 (3d Cir. 1997). The Court of Appeals for the Third Circuit has explained the objective element as requiring a showing that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . . If not our inquiry is at an end." <u>Fuentes v. Wagner</u>, 206 F.3d 335, 344 (3d Cir. 2000).

Plaintiff's allegation that he was forced to shower while standing in dirty water simply fails to state an objectively serious deprivation as required under the Eighth Amendment. <u>See,</u> <u>e.g.,</u> <u>Snipes v. DeTella</u>, 95 F.3d 586, 592 (7th Cir. 1996)("Snipes also claims prison authorities were deliberately indifferent to a prison condition posing a substantial risk of serious harm, namely, an inch or two of standing water in the shower. Snipes believes the fear and emotional distress he suffered from contemplating the risk of contracting AIDS or some other communicable disease constitutes a cruel and unusual punishment for which even the prison plumber should pay. . . . Assuming Snipes' story is true, the fact remains that an inch or two of water in the shower, even where one has a sore toe, is not 'an excessive risk to inmate health or safety' <u>Farmer</u>, 511 U.S at ----, 114 S.Ct. at 1979, nor the 'denial of the minimal civilized measure of life's necessities.' <u>Id.</u> at ----, 114 S.Ct. at 1977. The shower condition he describes may require extra care on his part to keep the toe clean, but such needed precautions do not ignite a constitutional claim"). <u>See also,</u> <u>Rish v. Johnson</u>, 131 F.3d 1092, 1096 (4th Cir. 1997) ("Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."). Hence, this Eighth Amendment conditions of confinement claim should be dismissed for failure to state a claim upon which relief can be granted.

We now turn to Plaintiff's next claim. Although not entirely clear from Plaintiff's operative complaint, Plaintiff clarifies in his response that Plaintiff is making a First Amendment retaliation claim and a Fourteenth Amendment procedural due process claim against the PRC members, namely Defendants Scekeres, Wingard and Kwisnek. Dkt. [74] at 11 to 12. The three Defendants' actions resulted in, at most, Plaintiff's stay in the RHU, formally under Administrative Custody for thirty days. Dkt. [74] at 13 ("Plaintiff spent 30 days in Greensburg's R.H.U." i.e., from February 11, 2008 until March 11, 2008). Dkt. [74] at 15.

Plaintiff's procedural due process claims are based upon the allegations that the PRC members failed to provide plaintiff with the written rationale and evidence relied upon for their approving his transfer to the RHU and that they denied his requests to present witnesses and evidence. Dkt. [74] at 11. Such allegations fail as a matter of law to make out a procedural due process claim.

Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

A protected liberty interest may arise from one of two sources: (1) directly from the Fourteenth Amendment's due process clause itself or (2) from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). There is no liberty interest created directly by the Fourteenth Amendment that prevents an inmate from being subjected to administrative or disciplinary segregation. See Sandin v. Conner, 515 U.S. 472, 484 (1995) ("Conner asserts, incorrectly, that any state action

25

taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation"); Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987) ("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population").

Neither has Pennsylvania created a liberty interest in being free from administrative or disciplinary confinement. Addressing the issue of state created liberty interests, the United States Supreme Court in Sandin v. Conner, 515 U.S. at 484, held that a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Placing Plaintiff in disciplinary segregation for 30 days does not impose such an atypical and significant hardship and so does not deprive him of any liberty interest. See also Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week did not amount to an atypical and significant hardship and thus did not deprive prisoner of a liberty interest); Smith v. Luciani, No. Civ. A. 97-3037, 1998 WL 151803, at *5 (E.D. Pa. March 31, 1998) ("In this case, plaintiff was subjected to seven months disciplinary time, a period of time half of that implicated in Griffin. Therefore, punishment of seven months in administrative custody, does not present 'the type of atypical, significant deprivation [in the context of prison life] in which a state might conceivably create a liberty interest.' Sandin, 515 U.S. at 486 (1995)."), aff'd, 178 F.3d 1280 (3d Cir. 1999) (Table). Having been deprived of no

26

liberty interest, Plaintiff was not entitled to any process. Hence, whatever flaws occurred in the PRC hearing, Plaintiff was not denied procedural due process.

As to the First Amendment retaliation claims against the three PRC members, the Court notes that the operative complaint is bereft of any specific claim of retaliation against the three PRC members. See Dkt. [61] at 6, ¶ 17(b)("Defendants identified in paragraphs 7 [i.e., Defendant Scekeres], 8 [i.e., Defendant Wingard], and 9 [i.e., Defendant Kwisnek] are members of the PRC panel that convened plaintiff's PRC hearing and are directly responsible for the events described in paragraphs 32, 34, 35, 36, and 36(a)."). The Court notes that none of the enumerated paragraphs even mentions any form of the word retaliate. It is only in the response that Plaintiff alleged as follows: "Plaintiff also alleges that the P.R.C. at SCI Greensburg assisted and joined in on the retaliation to facilitate a staff separation transfer." Dkt. [74] at 12.

There are several problems with Plaintiff's allegations. First, because the operative complaint contained not even a slightest hint of a claim of retaliation against the PRC members, Plaintiff's addition of such a claim in the response is improper, as the response is not simply clarifying a claim contained in the complaint but it seems to be adding a claim not contained in the operative complaint. This, Plaintiff is not permitted to do. Grayson v. Mayview State Hospital, 293 F.3d 103, 109 n.9 (3d Cir. 2002)("For the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading."). Accord Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). This is true, notwithstanding the fact that Plaintiff is pro se. See, e.g., McArdle v. Tronetti, 961 F.2d 1083, 1089 (3d Cir. 1992)(applying

rule of <u>Zimmerman v. PepsiCo.</u> but the pro se litigant there was an attorney); <u>Martin v. Zook</u>,

NO. CIV.A. 87-3775, 1988 WL 33919 (E.D.Pa. March 31, 1988)(applying rule of <u>Zimmerman v.</u>

<u>PepsiCo.</u> to pro se lay plaintiff).

However, even if we allowed Plaintiff's response to perform service as, in effect, an

amended complaint, such would not save Plaintiff's putative retaliation claim against the PRC

members from dismissal.  At most, Plaintiff's allegation in the response is a conclusory

formulaic statement that the PRC members retaliated against Plaintiff.  Such is insufficient.  As

the Court in <u>Twombly</u> explained: "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do[.]"  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955,

1964-65 (2007).  Accordingly, Plaintiff's retaliation claims against the PRC members should be

dismissed.

Lastly, Plaintiff appears to be making a defamation claim.  <u>See</u> Dkt. [61] at 5, ¶ 43

(referencing defamation); Dkt. [74] at 15 to 16.  However, defamation is a state intentional tort

and defamation claims are barred by the Pennsylvania Sovereign Immunity statute.  42 Pa.C.S.A.

§ 8522.  <u>See</u>, <u>e.g.</u>, <u>Aubrecht v. Pennsylvania State Police</u>,  No. 2:06cv1053, 2009 WL 793634, at

*10 (W.D.Pa. March 23, 2009)(holding state tort of defamation barred under state statutory

immunity); <u>McGrath v. Johnson</u>, 67 F.Supp.2d 499, 511-12 (E.D. Pa. 1999)(holding state law

claims of intentional torts barred by Sovereign Immunity Statute), <u>aff'd</u>, 35 Fed.Appx. 357 (3d

Cir. 2002)(Table); <u>Holt v. Northwest Pa. Training P'shp Consortium, Inc.</u>, 694 A.2d 1134, 1140

(Pa. Cmlth. 1997)(holding that intentional infliction of emotional distress did not exist in the

common law and that intentional acts come within sovereign immunity statute).  Accordingly,

Plaintiff's defamation claims should be dismissed as well for failure to state a claim upon which relief can be granted.

III. <u>Conclusion</u>

For the above stated reasons, Defendants' motion to dismiss, Dkt. [66], should be granted in part and denied in part. It should be granted as to all claims against all Defendants except it should be denied as to the following claims against the following defendants. It should be denied as to Plaintiff's (1) Equal Protection claim against Defendants Thomas, Davis, Collins and Engelbrecht concerning his being denied employment as an inmate library aide; (2) First Amendment claims of content based censorship against Defendants Collins and Davis for their alleged role in disbanding/discarding African American interest section of the library; (3) First Amendment retaliation claim against Defendant Walters where Walters fired Plaintiff from his peer to peer tutoring position; (4) the Equal Protection claim against Walters based upon the same firing; and (5) the Eighth Amendment deliberate indifference claim against Defendant Kwisnek as to denial of medication while in the RHU. Consequently, Defendants Lockett, Royer, Scekeres, Wingard, Bussard, Colland, Niedigh, Beard and Watson should be dismissed as party defendants.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 8 June, 2009

cc: The Honorable Terrence F. McVerry
United States District Judge

Aaron T. Jones
GN-0629
S.C.I. Fayette
Box 9999
LaBelle, PA 15450-0999

All counsel of record by Notice of Electronic Filing