IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON T. JONES, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Civil Action No. 08-16 |
| ) | Judge Terrence F. McVerry/ |
| MELVIN LOCKETT, Superintendent; ) | Magistrate Judge Amy Reynolds Hay |
| FRANCIS ROYER, Deputy ) | |
| Superintendent; PAUL THOMAS, School ) | |
| Principal; DAWN DAVIS, Librarian; ) | |
| PATRICIA COLLINS, Librarian Assistant; ) | |
| JAMES INGELBETCH, Correctional ) | |
| Officer; JAMES SCEKERES, Deputy ) | |
| Superintendent at S.C.I. Greensburg; ) | |
| TREVOR WINGARD, Deputy ) | |
| Superintendent at S.C.I. Greensburg; LORI ) | |
| KWISNEK, Health Care Administrator; ) | |
| ROBERT BUSSARD, Intelligence Captain ) | |
| at S.C.I. Greensburg; TONI COLLAND, ) | |
| Superintendent Assistant/Grievance ) | |
| Coordinator/Public Relations Officer; ) | |
| KENNETH NIEDIGH, Educational ) | |
| Instructor at S.C.I. Greensburg; CHARLES ) | |
| WALTERS, Academic Counselor at S.C.I. ) | |
| Greensburg; JEFFREY A. BEARD, ) | |
| Secretary of the States of Pennsylvania ) | |
| Department of Corrections, ) | Re: ECF Nos. 136 & 141 |
| ) | |
| Defendants ) | |

**MEMORANDUM ORDER**

The above-captioned pro se prisoner civil rights action was received by the Clerk of Court on January 4, 2008, and was referred to the now Chief United States Magistrate Judge Amy Reynolds Hay for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C.

§ 636(b)(1), and the then in-force local rules.

The Chief Magistrate Judge filed a report, recommending the grant of the Defendants' motions for summary judgment and the denial of Plaintiff's motion for summary judgment as moot. ECF No. 199. The Plaintiff was informed that in accordance with the Magistrate Judges Act, 28 U.S.C.§ 636(b)(1)(B) and (C), the local rules, he had a specific period of time in which to file his objections. Plaintiff filed his objections, consisting of 12 single spaced pages. ECF No. 200.

None of the objections merits rejection of the Report.

Most of Plaintiff's objections are based on distorting the record. For example, Plaintiff objects to the Report's statement that the books of African American interest, which formerly had been shelved all together in one section, were subsequently integrated into the whole of the library according to a library cataloguing system. ECF No. 200 at 2, ¶ 10. Specifically, he seems to object to the Report's statement that "Apparently, at some point there was an area of the library with all of the books deemed to be of African American interest placed in one section of shelves. Thereafter, those books were integrated into the other shelves of books of the library." ECF No. 199 at 9. He bases this objection "[o]n the ground that Defendants Davis/Thomas in their answeres [sic] to Interrogatories specifically state that none of the books on the shelves where the 'AAB' [i.e., African-American Books] were shelved were moved." ECF No. 200 at 2, ¶ 10. Plaintiff attached to his objections a copy of Paul Thomas' answers to interrogatories. While Plaintiff does not specifically point to a particular answer, the only answer remotely touching on this issue is as follows: Plaintiff asked "Did you authorize SCI Greensburg's library staff to dismantle the African-American book section." ECF No. 200-1 at 1, ¶ 4. Defendant

Thomas responded: "This statement is Denied as stated. The responding defendant does not agree with the characterization that the African-American book section was dismantled. Ms. Davis' reorganization of the library into a more logical 'user-friendly' system does not constitute dismantling. To the best of the responding defendant's knowledge, not a single book in that section was **removed**. It is possible books that were beyond repair were discarded, but that decision is based on the condition of the books, not because they were African-American." ECF No. 200-1 at 2 to 3, ¶ 4 (emphasis added). To the extent that Plaintiff's objection is based upon this statement by Defendant Thomas that no books from the African American section were **removed**, for the proposition that no African-American books were **moved** from one part of the library to another part of the library, in order to support his challenge to the Report's conclusion that the African American books were integrated into the whole of the collection, we are unpersuaded. Plaintiff is distorting the record and playing word games. We find that Defendant Walters use of the term "removed," in context, means "was not removed out of the library collection" and not, as Plaintiff would have it, "not moved around the library." Plaintiff's argument is either disingenuous or purposefully misleading. In fact, Plaintiff himself acknowledged that "Davis/Collins with their second attempt placed alpha call lettering on all of the African-American books but still left **them scattered throught** [sic] the library. . . ." ECF No. 186 at 4 (emphasis added).[1] Thus, the objection is without merit and patently so. However,

---

[1] See also ECF No. 188-2 at 3, ¶ 20 (answer to interrogatory by Defendant Davis who stated that "Many of those items [i.e., African American interest books] were not removed from that section [i.e., from the shelves that formerly housed the entire African American collection] but categorized by subject, thereby requiring the staff to shift the shelves in the middle of the collection to make room for the materials that were moved from one area to another."). We note that Plaintiff did not attach this response to his objections. While the Defendant Davis' answer states that many of the books in the African-American section were not moved, the use of

this is typical of Plaintiff's objections and his conduct throughout the course of this litigation.

To take another example. Plaintiff objects to the Report stating that there is more than one library interview panel. ECF No. 200 at 1, ¶ 5. The Report nowhere states that there was more than one library interview panel. Rather, the Report notes that Plaintiff was hired for work in the commissary and simply stated that "differences between hiring/interviewing panels does not mean that one panel was racist and one panel was not." ECF No. 199 at 7 to 8. The Report was clearly referring to the differences between the judgments of the library interviewing panel which found Plaintiff to be untrustworthy and the interviewer/hiring official(s) for the commissary position, which the Report assumed to have been comprised of a panel like the library interviewing/hiring panel. So again, this objection is a distortion of the record and meritless.

Plaintiff also objects to the Report's allegedly finding that Plaintiff "willfully broke rules concerning access to the library and that such behavior rendered plaintiff unsuitable for the position of trust" as a library aide. ECF No. 200 at 1, ¶ 3. The Report never made such a finding. Rather the Report found "before he was offered the position he came into the library

---

"many" indicates that at least some were required to be moved by the integration of the African American interest books into the whole of the library, based upon some standardized cataloguing system. It is not surprising that a cataloguing system might shelve similar subject materials in close proximity with each other, thereby causing a significant portion of African American interest books to be shelved together, and so, perhaps, approximating the "African American" interest section that existed prior to the integration/cataloguing. If anything, Davis' answer, and Plaintiff's reliance thereon, undermines the entire thrust of Plaintiff's lawsuit. Contrary to Plaintiff's apparent position that the African American interest section was dismantled and placed throughout the library, it appears that the cataloguing of the African American books resulted in a substantial portion of the books remaining in close proximity to each other just as they were prior to the cataloguing and integration. Neither Walters' nor Davis' responses undermine the Report's statement that at least some of "those [African American interest] books were integrated into the other shelves of books of the library." ECF No. 199 at 9.

when he was not authorized to do so and he admitted to staff that he came to the library without authorization to see if he could get away with doing so. ECF No. 142-3 at 2. While Plaintiff subsequently attempted to claim he made an honest mistake in coming into the library at an unauthorized time, the Defendants did not have to believe Plaintiff upon pain of being found liable for an alleged equal protection violation. In other words, the Defendants were free to disbelieve Plaintiff's excuse and find that he willfully broke rules concerning access to the library and that such behavior rendered him unsuitable for the position of trust." ECF No. 199 at 6 to 7 (footnote omitted). The Report did not find that Plaintiff "willfully broke rules," the Report found that he came into the library at a time he was not authorized to do so, but never stated that Plaintiff knowingly did so, but only stated that the Defendants were free to so believe and based thereon were free to find such behavior disqualified him from the library aide job and that this was so even if the Defendants were mistaken in their assessment. Hence, we find this objection without merit and again a distortion of the record.

While Plaintiff objects to the Report's reliance on qualified immunity as a grounds for granting summary judgment, and Plaintiff claims that the Defendants waived the defense by not raising it, ECF No. 200, at 9, ¶ 39, again Plaintiff misstates the record. The Defendants most certainly did raise the defense of qualified immunity in their answer. ECF No. 103 at 4 (Fifth Affirmative Defense).

The Court could continue to illustrate the unfounded nature of Plaintiff's objections but there are only limited judicial resources. Accordingly, the Court having reviewed the objections in detail, has found none of them merits rejection of the Report. As to those few objections which do not outright distort the record, the Court finds that, at most, the objections point to

5

factual disputes that are not "material" for summary judgment purposes, see, e.g., ECF No. 200 at 3, ¶ 18 (quibbling over whether Defendant Davis had to consult anyone regarding the integration of the African American section); id., at 7, ¶ 31 (contending that Defendant Walters violated state law, which, for Section 1983 purposes is irrelevant[2] and, contrary to Plaintiff's suggestion, merely violating state law does not mean that Defendant Walters could not use discretion in deciding to credit Plaintiff or not credit Plaintiff's version of the events), or that the evidence to which the objections point is, at most "merely colorable . . . or is not significantly probative," within the contemplation of Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986), see, e.g., ECF No. 200, at 4, ¶ 21 (suggesting that seven books out of 100 that were discarded were African American books and that this helps to establish content based censorship/ discrimination).[3]

None of the other objections merits further discussion or rejection of the Report. We find that the Report's analysis is an adequate response to any remaining objections.

After *de novo* review of the pleadings and the documents in the case, together with the Report and Recommendation and objections, the following order is entered:

**AND NOW**, this 30th day of September, 2010;

**IT IS HEREBY ORDERED** that the Defendants' Motion for Summary

---

[2] Giuffre v. Bissell, 31 F.3d 1241, 1257 (3d Cir. 1994) ("Violations of state law, however, are insufficient to state a claim under § 1983.").

[3] There is one objection that is accurate. The Report references a "Defendant Roberts" throughout Footnote 6, ECF No. 199 at 12 to 13 n.6. In his objections, Plaintiff asks who is defendant Roberts. ECF No. 200 at 3, ¶ 18. Reading the footnote in context and based upon the references cited, it is clear that when the Report references "Defendant Roberts," the Report really intended to mean thereby Defendant Thomas. There is, in fact, no defendant with the last name of Roberts in this case.

Judgment, ECF No. 141, is **GRANTED** and Plaintiff's Motion for Summary Judgment, ECF No. 136, is **DENIED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation, ECF No. 199, filed on September 7, 2010 by Chief Magistrate Judge Hay, is adopted as the opinion of the Court with the correction to the name of Defendant Thomas in footnote six of the Report. Any other pending motions are DENIED as moot. The Clerk is to mark the case closed.

Lastly, the court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith.

        s/ Terrence F. McVerry
        Terrence F. McVerry
        United States District Judge

Dated:

cc: The Honorable Amy Reynolds Hay
    Chief U.S. Magistrate Judge

    Aaron T. Jones
    GN-0629
    S.C.I. Fayette
    Box 9999
    LaBelle, PA 15450-0999

    All counsel of record by Notice of Electronic Filing